# UNITED STATES DISTRICT COURT
for the
Middle District of North Carolina

| | |
|---|---|
| In the Matter of the Seizure of<br>*(Briefly describe the property to be seized)*<br>All funds on deposit up to a total of $449,909.96 in Truist Bank account number xxxxxxxx0982, held in the name of Cashshore, LLC | ) ) ) ) ) Case No. 1:22 mj 473 |

## APPLICATION FOR A WARRANT
## TO SEIZE PROPERTY SUBJECT TO FORFEITURE BY TELEPHONE OR OTHER
## RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or attorney for the government, request a seizure warrant and state under penalty of perjury that I have reason to believe that the following property in the __Middle__ District of __North Carolina__ is subject to forfeiture to the United States of America under __18__ U.S.C. § 981(a)(1)(A) and C & 18 USC 982(a) *describe the property)*:

All funds on deposit up to a total of $449,909.96 in Truist Bank account number xxxxxxxx0982, in the name of Cashshore, LLC

The application is based on these facts:
See attached Affidavit.

☑ Continued on the attached sheet.

/s/ Ernest K. Wrenn, Special Agent, USSS
*Applicant's signature*

Ernest K. Wrenn, Special Agent, USSS
*Printed name and title*

In accordance with Rule 4.1(b)(2)(A), the Applicant attested under oath to the contents of this Application, which was submitted to me by reliable elecronic means, on this 1st day of December, 2022, at 11:53 a.m./p.m.

Date: 12/01/22

*Judge's signature*

City and state: Greensboro, NC

L. Patrick Auld, United States Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEIZURE WARRANT

I, Ernest K. Wrenn, being first duly sworn, hereby depose and state as follows:

1. Affiant makes this Affidavit in support of the attached Application for a combined civil and criminal Seizure Warrant under 18 U.S.C. § 981(a)(1)(A) and (C) (civil seizure warrants) and 18 U.S.C. § 982(a) (criminal forfeiture seizure warrants) for funds up to $449,909.96 in Truist Bank ("Truist") account XXXXXXXXXX0982 held in the name of Cashshore, LLC (hereinafter, "TARGET ACCOUNT").

2. Affiant has probable cause to believe that the funds identified for seizure herein constitute or are derived from proceeds of wire fraud in violation of 18 U.S.C. § 1343 and property involved in monetary transactions and money laundering conspiracy in violation of 18 U.S.C. §§ 1957 and 1956(h), and are therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) (civil forfeiture of property involved in money laundering); 18 U.S.C. § 981(a)(1)(C) (civil forfeiture of fraud proceeds); 28 U.S.C. § 2461(c) (criminal forfeiture of fraud proceeds under Section 981); and 18 U.S.C. § 982(a)(1) (criminal forfeiture of property involved in violations of Section 1956 and 1957). Further, since funds can be easily moved, the requested Seizure Warrant is necessary to assure the availability of funds for forfeiture.

3. Affiant is a Special Agent with the United States Secret Service and has been since 2010. Affiant has received specialized training and experience in the investigation of financial crimes, including mail fraud, wire fraud, securities fraud, bank fraud, and money laundering, as well as other violations of federal law.

4. This Affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. The information contained herein comes from my personal knowledge, information conveyed by other law enforcement officers, employees of a company identified herein as Victim Company, and publicly available information.

## SUMMARY OF THE SCHEME

6. Affiant submits there is probable cause to believe that in or about November of 2022, within the Middle District of North Carolina and elsewhere, an unidentified individual (hereinafter "UI") committed wire fraud and money laundering, in violation of 18 U.S.C. §§ 1343 and 1956(h), to defraud a company (hereinafter "Victim Company") out of approximately $449,909.96.

7. Specifically, Affiant has probable cause to believe that an employee of Victim Company, with authority to conduct financial transactions on behalf of Victim Company, fell victim to a business email compromise scheme — a scheme wherein a criminal access the email account of a person without authorization and then sends unauthorized email communication to another person to cause unauthorized detrimental financial transactions.

## VICTIM COMPANY

8. Victim Company is a real estate development company located in Greensboro, North Carolina. Victim Company has a bank account at First Citizens Bank, and when Victim Company conducts financial transactions, Victim Company regularly transfers and receives funds via wire deposit through its account at First Citizens Bank.

## THE SCHEME

9. On or about November 8, 2022, a representative of Victim Company received an email from another Victim Company representative, instructing them to conduct a wire transfer of $449,909.96 on the Victim Company's behalf to a title and escrow company for a real estate transaction. Attached to the email was a Cash Settlement Statement and Wiring Instructions. The bank wire instructions included the title company's bank name, routing number, and account number. The wire transfer was associated with the closing cost for a real estate deal.

10. On or about November 8, 2022, the Victim Company representative wired $449,909.96 from Victim Company's bank account to the TARGET ACCOUNT, believing that the TARGET ACCOUNT was an account held by the title and escrow company.

11. On or about November 16, 2022, a Victim Company representative discovered the unauthorized wire transfer. The Victim Company representatives reviewed the Cash Settlement Statement and confirmed that this real estate deal was fictitious.

12. Further investigation by the Victim Company revealed that the email account belonging to the employee who authorized the transfer had been compromised. The email account associated with the requested wire transfer had been compromised by an UI, who added three (3) rules to the email account. These rules resulted in incoming emails to be rerouted to a folder named "RSS Feeds", which prevented the Victim Company from discovering the scheme.

13. A review of the email requesting the wire transfer revealed that the Victim Company's senior management's email addresses were changed from ".com" to ".cam". This change prevented the delivery of this email to senior management.

14. On or about November 16, 2022, the Victim Company representative contacted a First Citizens Bank representative, advised the representative about the wire transfer, and requested that the wire transfer be stopped.

15. On or about November 16, 2022, your Affiant confirmed that the TARGET ACCOUNT was held by Truist Bank. The TARGET ACCOUNT was under the business name Cashshore, LLC. The TARGET ACCOUNT had approximately $157,000.00 remaining.

## MONEY MULES GENERALLY

16. Based on your Affiant's training and experience, your Affiant knows that a "money mule" is a person whose bank account(s) acts as a conduit between a victim of a financial fraud scheme, which is generally committed via the Internet, and the criminal(s) who perpetrates the fraud scheme and receives the funds that originated from the victim. In your Affiant's experience and in discussion with other law enforcement officers who investigate fraud schemes committed via the Internet, "money mules" are often persons sixty years or older; persons who develop a romantic relationship with someone they never meet in person but consider a "boyfriend" or "girlfriend"; unemployed persons who gain "employment" by simply conducting financial transactions on behalf of a purported "employer" who recruits the money mule; and/or persons who believe or purport to believe that they are being recruited to transact money from a legitimate source, such as an inheritance

4

or business deal. However, in actuality, fraudsters and money launderers, often located outside of the United States, use the internet to exploit human emotion and, particularly, to exploit individuals who seek out online relationships, and then use those individuals and the individuals' accounts to create the aforementioned conduits to move money, stolen from victims, from the victims' accounts through the money mules and to accounts controlled by the fraudsters.

17. This investigation involves one U.S. Citizen acting as a money mule, who is identified at Money Mule 1, and who has signature authority over the TARGET ACCOUNT.

## USSS INTERVIEW OF THE MONEY MULE

18. On or about November 18, 2022, the Orlando Field Office of the U.S. Secret Service interviewed Money Mule 1 at his residence in Melbourne, FL. Money Mule 1 admitted to receiving funds from the North Carolina-based victim.

19. Money Mule 1 reported that he previously met a subject on Facebook, who identified himself as Andrew Cambridge. Money Mule 1 and Cambridge never met in person, and only communicated via Facebook, WhatsApp, text messages, and phone calls. Cambridge claimed to own an escrow company and was involved in purchasing cryptocurrency for individuals who lived in countries where it was illegal to purchase. Cambridge recruited Money Mule 1 to work for him and promised to give him step-by-step instructions on how to purchase cryptocurrency and move it into accounts overseas. Money Mule 1 was promised a percentage/commission from each transaction completed.

20. Money Mule 1 was instructed to use his already established corporation, Cashshore LLC, to conduct business. Cashshore LLC was established by Money Mule 1 in or about May of 2021 for an ATM business venture.

21. Money Mule 1 was successful at completing multiple wire transactions, converting the funds received from the Victim Company bank account into cryptocurrency. Money Mule 1 was notified by Truist Bank on his third transaction that the remaining funds in the account were frozen and unavailable to him. Money Mule 1 added that Cambridge became agitated and threatening when he was told that Money Mule 1 could not conduct any more transactions. Money Mule 1 provided texts chains and chats which corroborated his story.

Money Mule 1 acknowledged that he did not know that the funds received were from an unauthorized bank wire transfer from the Victim Company's bank account.

## CONCLUSION: PROPERTY SUBJECT TO SEIZURE

22. Based on the aforementioned information derived from the investigation to-date, Affiant has probable cause to believe that funds up to $449,909.96 in the TARGET ACCOUNT constitute or are derived from fraud proceeds and/or property involved in wire fraud and/or money laundering and are therefore subject to seizure and forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) and (C) and 18 U.S.C. § 982(a). Further, a restraining order is not sufficient to assure the availability of funds for forfeiture, so a seizure warrant is necessary. Therefore, Affiant submits that this Affidavit supports probable cause for a Warrant to seize the Funds identified herein.

/s/ Ernest K Wrenn by LPA

Ernest K. Wrenn
Special Agent
United States Secret Service

Attested to under oath by telephone

Subscribed and sworn to before me this 1st day of December, 2022.

_____
United States Magistrate Judge
Middle District of North Carolina

7